1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2020

SEAN F. McAVOY, CLERK

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7  MECHELLE H.,[1]                                  No. 1:19-cv-03220-MKD
                    Plaintiff,
8                                                   ORDER GRANTING PLAINTIFF'S
       vs.                                          MOTION FOR SUMMARY
9                                                   JUDGMENT AND DENYING
   ANDREW M. SAUL,                                  DEFENDANT'S MOTION FOR
10 COMMISSIONER OF SOCIAL                           SUMMARY JUDGMENT
   SECURITY,
11                  Defendant.                      ECF Nos. 19, 21

12

13         Before the Court are the parties' cross-motions for summary judgment.  ECF

14 Nos. 19, 21.  The parties consented to proceed before a magistrate judge.  ECF No.

15 8.  The Court, having reviewed the administrative record and the parties' briefing,

16 _____

17 [1] To protect the privacy of plaintiffs in social security cases, the undersigned

18 identifies them by only their first names and the initial of their last names.  *See*

19 LCivR 5.2(c).

20

-

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 19, and denies Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

1  rational interpretation, [the court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3  F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

4  ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

5  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

7  decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

8  *Sanders*, 556 U.S. 396, 409-10 (2009).

9  **FIVE-STEP EVALUATION PROCESS**

10  A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act. First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 14, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of January 30, 2014.  Tr. 112, 237-48.  The applications were denied

initially and on reconsideration.  Tr. 139-42; Tr. 147-51.  Plaintiff appeared before

an administrative law judge (ALJ) on May 1, 2018.  Tr. 35-83.  On September 14,

2018, the ALJ denied Plaintiff's claim.  Tr. 12-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through March 31, 2019, has not engaged in substantial gainful activity since January 30, 2014.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: carpal tunnel syndrome, asthma, anxiety disorder, major depressive disorder, post-traumatic stress disorder, and substance abuse disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs.  She can frequently balance, stoop, kneel, and crouch.  [Plaintiff] cannot climb ladders, ropes, and scaffolds or crawl.  She can frequently handle and finger. [Plaintiff] must avoid concentrated exposure to extreme cold, vibrations, and hazards.  [Plaintiff] can perform simple, routine tasks and follow short, simple instructions.  She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period.  [Plaintiff] requires a work environment with minimal supervisor contact.  (Minimal contact does not preclude all contact; rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor).  [Plaintiff] can work in proximity to coworkers but not in a cooperative or team effort.  She requires a work environment that has no more than superficial interactions with coworkers. [Plaintiff] requires a work environment that is predictable and with few work setting changes.  She requires a work environment without public contact.

ORDER - 7

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler, marker, and garment sorter.  Tr. 27.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of January 30, 2014, through the date of the decision.  Tr. 28.

On July 15, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated lay witness evidence; and

3.  Whether the ALJ properly evaluated medical opinion evidence.

ORDER - 8

ECF No. 19 at 4-21.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 19 at 4-14. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

1    *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

2    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

3    explain why it discounted claimant's symptom claims)).  "The clear and

4    convincing [evidence] standard is the most demanding required in Social Security

5    cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

6    *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

7         Factors to be considered in evaluating the intensity, persistence, and limiting

8    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

9    duration, frequency, and intensity of pain or other symptoms; 3) factors that

10   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

11   side effects of any medication an individual takes or has taken to alleviate pain or

12   other symptoms; 5) treatment, other than medication, an individual receives or has

13   received for relief of pain or other symptoms; 6) any measures other than treatment

14   an individual uses or has used to relieve pain or other symptoms; and 7) any other

15   factors concerning an individual's functional limitations and restrictions due to

16   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

17   404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

18   an individual's record," to "determine how symptoms limit ability to perform

19   work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

20

ORDER - 10

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1.  Objective Evidence

The ALJ found Plaintiff's symptom complaints are inconsistent with the objective evidence.  Tr. 20-23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found Plaintiff's physical symptom complaints are out of proportion with her typically unremarkable presentation during treatment visits. Tr. 23.  While Plaintiff alleges difficulty walking for prolonged periods due to asthma, she generally had normal breathing with clear lungs and no wheezing, including an appointment where she reported daily use of her inhaler and dyspnea,

ORDER - 11

and she had a normal gait.  Tr. 20-21, 23 (citing Tr. 378, 385, 555-59, 611, 618).

Plaintiff also had a normal pulmonary function test.  Tr. 21, 23 (citing Tr. 618).

Plaintiff reports difficulty lifting items and using her hands due to carpal tunnel,

but she had normal strength, tone and range of motion in her upper extremities,

though she had a positive Phalen's and Finkel's on one examination.  Tr. 20-21, 23

(citing Tr. 381-82, 555-59, 613).

Similarly, the ALJ found Plaintiff's mental health symptom complaints were

out of proportion with her typically unmarkable presentation at treatment visits.

Tr. 21-23.  While Plaintiff has reported difficulty leaving her home, and was noted

as being on the verge of tears in early 2014, the ALJ noted Plaintiff had normal

mood, affect, and memory, and her provider noted she was stabilizing at a modest

pace.  Tr. 21 (citing Tr. 378, 384).  The same records indicate Plaintiff was anxious

and fearful, Tr. 377, and "frequently on the verge of tears," Tr. 384.  In June 2015,

Plaintiff reported worsening of her symptoms, but Plaintiff had a normal mental

status examination besides being somewhat anxious and initially having rapid

speech that slowed to normal, and by the end of 2015, she was noted as anxious

and depressed but talkative, cooperative, pleasant, and well-groomed.  Tr. 21-22

(citing Tr. 353-54, 426).  However, at the appointments, Plaintiff reported not

leaving her home, having nightmares and panic attacks, and her provider noted

Plaintiff was upset and tearful, and her "anxiety is not controlled at all."  Tr. 353-

ORDER - 12

54, 426.  Plaintiff's providers noted some abnormalities in 2016, including slightly

agitated motor activity, pressured speech, impaired insight/judgement, and some

paranoia, though mental status examinations generally demonstrated normal

memory, attention, concentration, speech, and cognitive functioning.  Tr. 22 (citing

Tr. 499, 504, 510, 521, 540, 546).  In 2017, Plaintiff continued to report difficulty

leaving her home, and she continued to be tearful, depressed and anxious, with

normal to rapid speech, tangential thoughts, and impaired judgment and insight but

normal attention, concentration, memory and cognitive functioning.  Tr. 22 (citing

Tr. 579).  In 2018, Plaintiff was scared and sad, with normal to rapid speech, her

thoughts were less tangential, and the ALJ found her examinations were otherwise

normal.  Tr. 22 (citing Tr. 599, 626, 630).

While the ALJ summarized some of the relevant evidence and found the

objective evidence is inconsistent with Plaintiff's symptom claims, an ALJ must

consider all of the relevant evidence in the record and may not point to only those

portions of the records that bolster his findings.  *See, e.g., Holohan v. Massanari*,

246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively

rely on some entries in plaintiff's records while ignoring others).  The ALJ is not

permitted to "cherry pick" from mixed evidence to support a denial of benefits.

*Garrison*, 759 F.3d at 1017 n.23.  As discussed herein, the ALJ cited portions of

the record showing milder examination findings while the longitudinal record

showed more mixed results, leading to a characterization of the medical evidence

as a whole that is not supported by substantial evidence.

There are multiple references to Plaintiff's suicidal ideation throughout the

record, which the ALJ did not discuss.  Tr. 420, 422, 546, 565, 601.  Even at

appointments where Plaintiff reported she was doing "better," she was observed as

labile, crying, and tangential.  Tr. 603-04.  When Plaintiff was noted as "less"

tangential than previous visits, she still had continued anxiety, crying, and rapid

speech during the appointment, and endorsed thoughts of suicide.  Tr. 602.  While

the ALJ noted Plaintiff's examinations were "normal" in 2018 besides notes she

was scared and sad, with normal to rapid speech, and less tangential thoughts, Tr.

22, the ALJ cited to examinations that included multiple additional abnormalities

including notes Plaintiff was worried, crying, and endorsed suicidal ideation, Tr.

599, and she was depressed, anxious, and tearful, with moderate insight/judgment,

Tr. 626, 630.  As the ALJ's characterization of the medical evidence as a whole is

not supported by substantial evidence, this was not a clear and convincing reason

to reject Plaintiff's symptom claims.

*2. Improvement with Treatment*

The ALJ found Plaintiff's improvement with treatment is inconsistent with

her symptom complaints.  Tr. 23.  The effectiveness of treatment is a relevant

factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§

ORDER - 14

404.1529(c)(3), 614.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted Plaintiff had improvement in her symptoms when she was taking her medication, including improvement in her ability to sleep, eat daily, and leave her house.  Tr. 23-24 (citing Tr. 509, 599, 606, 613, 639).  At one of the cited appointments, Plaintiff reported some of her medications were stolen and she was taking the remaining medications as prescribed, and even with medication, Plaintiff was scared, sad, crying during the appointment, with normal to rapid speech, and though her thoughts were "less" tangential than the prior visit, they remained tangential.  Tr. 599.  Plaintiff also reported continued suicidal ideation. *Id.*  At another cited appointment, while Plaintiff reported doing "better," she also stated it was one of her good days, yet Plaintiff remained anxious, with a dysthymic mood, paranoia, and she had impaired insight and judgment.  Tr. 503-04.  At another appointment, Plaintiff reported taking her medications as prescribed, but reported "difficulty functioning in all major life roles," difficulty leaving the home and completing sentences, and she was fearful, crying, and labile during the appointment, with tangential thoughts, paranoid thoughts, and rapid speech.  Tr. 606.  At a November 2017 visit, Plaintiff reported doing better and

ORDER - 15

taking her medications, but Plaintiff remained anxious, tangential and difficult to

redirect, and paranoid, and she had only moderate insight and judgment.  Tr. 639-

40.  One cited visit was for treatment of carpal tunnel, during which Plaintiff

reported doing "better" and taking her medications, but there are no notes about

her psychological functioning.  Tr. 613-14.  The ALJ erred in finding that

Plaintiff's improvement with treatment was inconsistent with her allegations, as the

finding is not supported by substantial evidence.

### 3.  Lack of Treatment

The ALJ found Plaintiff's lack of mental health treatment is inconsistent

with her symptom claims.  Tr. 23-24.  An unexplained, or inadequately explained,

failure to seek treatment or follow a prescribed course of treatment may be

considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*,

495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation

and lack of motivation to seek treatment are appropriate considerations in

determining the credibility of a claimant's subjective symptom reports.  *Osenbrock*

*v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F.

App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was

not seeking treatment).  When there is no evidence suggesting that the failure to

seek or participate in treatment is attributable to a mental impairment rather than a

personal preference, it is reasonable for the ALJ to conclude that the level or

ORDER - 16

frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ noted Plaintiff discontinued her medication in August 2017, despite encouragement to continue taking it.  Tr. 23-24 (citing Tr. 453, 503, 646).  Plaintiff did not contact a provider for a refill until October 2017 when she again reported the medications were helpful.  Tr. 24 (citing Tr. 606, 639, 646).  Plaintiff's mental health provider was unable to reach her from September 22, 2017 through December 2017.  Tr. 24 (citing Tr. 658).  From December 2017 through March 2018, Plaintiff reported taking her medication but with poor compliance at times. Tr. 24 (citing Tr. 599, 601, 629).

While the ALJ discussed Plaintiff's periods in which she did not take her medication or attend counseling appointments, the ALJ did not address any of the reasons why Plaintiff was not compliant with treatment.  Tr. 23-24.  Plaintiff reported she stopped taking her medications because she was feeling foggy due to her medications, and restarted her medications on a lower dose.  Tr. 646.  She reported not taking her medications once because they were stolen and she had not

ORDER - 17

been able to get them refilled, Tr. 599, and sometimes because she forgot to take them and felt they would not help with her problems with her daughter, but agreed to try to remember to take them daily.  Tr. 629.  Plaintiff also missed counseling appointments due to transportation issues, being ill, feeling treatment was not effective, difficulty connecting with her therapist, and due to being too anxious or paranoid to leave her home.  Tr. 53-56, 348, 441, 579, 622, 638.  The ALJ erred in failing to consider the reasons Plaintiff did not always comply with treatment.  *See* SSR 16-3p *8 (March 16, 2016), *available at* 2016 WL 1119029 (instructing that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").  On remand, the ALJ is instructed to consider the reasons Plaintiff offered for her medication and treatment noncompliance.

While the ALJ offered an additional reason to reject Plaintiff's symptom claims, the Court finds the ALJ erred in his consideration of Plaintiff's symptom complaints for the reasons discussed *supra*.  On remand, the ALJ is instructed to incorporate Plaintiff's reported limitations into the RFC or give clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.

**B. Lay Witness Evidence**

Plaintiff contends the ALJ erred in rejecting the lay witness statements of

Bill Hughes, Martha Boersma, and E. Psoinos.  ECF No. 19 at 14-17.  An ALJ

must consider the statement of lay witnesses in determining whether a claimant is

disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

2006).  Lay witness evidence cannot establish the existence of medically

determinable impairments, but lay witness evidence is "competent evidence" as to

"how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. §

416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)

("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition.").  If a lay witness

statement is rejected, the ALJ "'must give reasons that are germane to each

witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*,

12 F.3d at 919).

Plaintiff's husband, Bill Hughes, completed a third-party function report,

wrote a letter, and testified at the hearing regarding Plaintiff's functioning.  Tr. 59-

71, 271-78, 333.  Mr. Hughes stated Plaintiff cannot interact well with others as

she gets angry, emotional and begins to cry.  Tr. 271.  Mr. Hughes reported

Plaintiff can generally handle tasks and personal care in her home, but needs

assistance with anything outside of the home, including reminders to attend

appointments, she is accompanied when she leaves the home, and she is driven as

Plaintiff does not drive due to anxiety.  Tr. 272-75.  He reported Plaintiff cannot

handle stress, cannot handle money/bills, and has difficulty completing tasks,

concentrating, following instructions, understanding, remembering things, and

getting along with others.  Tr. 274-77.  He testified Plaintiff has periods where she

loses her temper then falls into a depression, and she experiences panic attacks.  Tr.

66-67.

Plaintiff's mother, Martha Boersma, wrote a letter regarding Plaintiff's

functioning.  Tr. 334.  Ms. Boersma stated Plaintiff is afraid to leave her home,

experiences panic attacks and nightmares, and is very fearful, sad, and angry.  *Id.*

The ALJ gave limited to weight to both Mr. Hughes and Ms. Boersma's

statements.  Tr. 26.  E. Psoinos, a Social Security field office staff, observed

Plaintiff was nervous and had difficulty with her memory during her application

interview.  Tr. 260.  The ALJ did not address this statement.

First, the ALJ found the lay statements of Mr. Hughes and Ms. Boersma

were based on casual observations and not medical evidence. Tr. 26.  "[M]edical

diagnoses are beyond the competence of lay witnesses and therefore do not

constitute competent evidence." *Nguyen*, 100 F.3d at 1467.  However, lay

testimony "as to a claimant's symptoms or how an impairment affects ability to

work *is* competent evidence." *Id.* (emphasis in original).  The lay statements

ORDER - 20

addressed lay observations and opinions, and did not include attempts by the lay witnesses to give medical diagnoses or opinions. As such, this was not a germane reason to reject the opinions.

Second, the ALJ found the lay statements restate Plaintiff's subjective complaints, which the ALJ found inconsistent with the evidence. Tr. 26. Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"). As the Court finds the ALJ improperly rejected Plaintiff's symptom complaints, the ALJ may not rely on those same reasons to reject the lay opinion. As such, this was not a germane reason to reject the lay witness opinions.

While the ALJ offered an additional reason to reject the lay opinions of Mr. Hughes and Ms. Boersma, the Court finds the ALJ erred in rejecting the opinions for the reasons discussed *supra.* On remand, the ALJ is instructed to reconsider the opinions of Mr. Hughes and Ms. Boersma, and incorporate the limitations into the RFC or give germane reasons to reject the opinions. The ALJ is further

ORDER - 21

instructed to consider if E. Psoinos' statement amounts to an opinion, and if so,

incorporate the limitations into the RFC or give germane reasons to reject the

opinion.

## C. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinion of

Michael Aquilino, LMHC.  ECF No. 19 at 17-21.  "Only physicians and certain

other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*,

763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913

(2013).[2]  However, an ALJ is required to consider evidence from non-acceptable

medical sources, such as therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[3]

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§

404.1502, 416.902 for claims filed after March 27, 2017.  The Court applies the

regulation in effect at the time the claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable

medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after

March 27, 2017.  The Court applies the regulation in effect at the time the claim

was filed.

ORDER - 22

An ALJ may reject the opinion of a non-acceptable medical source by giving

reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

On October 30, 2017, Mr. Aquilino completed a questionnaire on Plaintiff's

functioning.  Tr. 595-97.  Mr. Aquilino opined Plaintiff is not limited in her ability

to maintain socially appropriate behavior and adhere to basic standards of

neatness/cleanliness; moderately limited in her ability to remember locations and

work-like procedures, and sustain an ordinary routine without special supervision;

markedly limited in her ability to understand and remember very short and simple

instructions, carry out very short simple instructions, work in coordination with or

proximity to others without being distracted by them, make simple work-related

decisions, accept instructions and respond appropriately to criticism from

supervisors, get along with coworkers or peers without distracting them or

exhibiting behavioral extremes, respond appropriately to changes in the work

setting, and set realistic goals or make plans independently of others; and severely

limited in her ability to understand and remember detailed instructions, carry out

detailed instructions, maintain attention and concentration for extended periods,

perform activities within a schedule, maintain regular attendance and be punctual

within customary tolerances, complete a normal workday/workweek without

interruptions from psychologically based symptoms and to perform at a consistent

pace without an unreasonable number/length of rest periods, interact appropriately

ORDER - 23

1  with the general public, ask simple questions or request assistance, be aware of

2  normal hazards and take appropriate precautions, and travel to unfamiliar places or

3  use public transit. Tr. 595-96. Mr. Aquilino further opined Plaintiff has marked

4  limitations in her activities of daily living and extreme limitations in maintaining

5  social functioning and maintaining concentration, persistence or pace, and opined

6  Plaintiff would miss four or more days per month and be off task more than 30

7  percent of the time if she worked full-time. Tr. 597. The ALJ gave Mr. Aquilino's

8  opinion slight weight. Tr. 24. As Mr. Aquilino is not an acceptable medical

9  source, the ALJ was required to give germane reasons to reject the opinion. *See*

10 *Ghanim*, 763 F.3d at 1161.

11     First, the ALJ found Mr. Aquilino's opinion is inconsistent with the

12 objective evidence. Tr. 24. Relevant factors when evaluating a medical opinion

13 include the amount of relevant evidence that supports the opinion and the

14 consistency of the medical opinion with the record as a whole. *Lingenfelter v.*

15 *Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th

16 Cir. 2007). As discussed *supra,* the ALJ erred in his consideration of the objective

17 medical evidence. As such, this was not a germane reason to reject Mr. Aquilino's

18 opinion.

19     Second, the ALJ found Mr. Aquilino did not provide an adequate

20 explanation for his opinion, including not explaining how or if he considered

ORDER - 24

Plaintiff's substance abuse and improvement with treatment.  Tr. 24.  The Social

Security regulations "give more weight to opinions that are explained than to those

that are not." *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion

of any physician, including a treating physician, if that opinion is brief, conclusory

and inadequately supported by clinical findings." *Bray*, 554 at 1228.  While Mr.

Aquilino's opinion is not accompanied by an explanation within the questionnaire,

the ALJ may not reject an opinion solely because it is a check-box questionnaire

when the questionnaire is supported by the treatment records.  *See Garrison*, 759

F.3d at 1014 n. 17.  As discussed *supra,* Mr. Aquilino's records contain multiple

abnormal mental status examinations that were not fully addressed by the ALJ.

The ALJ also found Mr. Aquilino did not address Plaintiff's functioning when

considering whether Plaintiff was continuing substance use or medication use.  Tr.

24.  However, Mr. Aquilino's questionnaire explicitly stated the opinion addresses

Plaintiff's functioning when she is free of alcohol or drug use.  Tr. 595.  The ALJ

noted a provider's familiarity with other evidence, including a claimant's substance

abuse, is a relevant factor to consider; Mr. Aquilino's treatment records mention

Plaintiff's substance use, demonstrating he is familiar with Plaintiff's use, and the

records discuss Plaintiff's use of medication.  Tr. 602, 604, 606.  This was not a

germane reason to reject the opinion.

ORDER - 25

1        Third, the ALJ noted Mr. Aquilino is not an acceptable medical source.  Tr.

2    24.  The ALJ is required to consider evidence from non-acceptable medical

3    sources.  20 C.F.R. §§ 404.1527, 416.927 (2012).  Although an individual's status

4    as a medically acceptable source may impact the amount of deference the ALJ

5    gives to an opinion, the ALJ may not reject an opinion as to a claimant's

6    limitations because the opinion comes from a non-acceptable medical source.  20

7    C.F.R. §§ 404.1527, 416.927 (2012).  The fact that Mr. Aquilino is not an

8    acceptable medical source is not a germane reason to reject the opinion.  As such,

9    the ALJ erred in his consideration of Mr. Aquilino's opinion.  On remand, the ALJ

10   is instructed to reconsider Mr. Aquilino's opinion and incorporate the limitations

11   into the RFC or give germane reasons to reject the opinion.  The ALJ is further

12   instructed to call a psychological expert to assist with determining if Plaintiff's

13   impairments meet or equal a listing and what limitations her impairments cause.

14        Plaintiff has not argued for an award of immediate benefits, and the Court

15   finds further proceedings are necessary to address conflicting evidence and take

16   expert testimony.  As such, the case is remanded for proceedings consistent with

17   this Order.

18

19

20

ORDER - 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 20, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 27